UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANET WALTON                                CIVIL ACTION

VERSUS                                      NO. 09-7627

TOM J. VILSACK, SECRETARY,                  MAGISTRATE JUDGE
U.S. DEPARTMENT OF AGRICULTURE              JOSEPH C. WILKINSON, JR.

### ORDER AND REASONS ON MOTION

This is an employment discrimination action filed by plaintiff, Janet Walton,

against her employer, Tom J. Vilsack, the Secretary of the United States Department of

Agriculture ("USDA").  Walton alleges that defendant discriminated against her on the

basis of her race, sex and age in violation of Title VII, 42 U.S.C. § 2000e et seq., and the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., when she

was not selected for a promotion in January 2007.  Record Doc. No. 1, Complaint.

This matter was referred to the undersigned magistrate judge for all proceedings

and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all

parties.  Record Doc. No. 19.

Defendant filed a motion for summary judgment seeking dismissal of all of

plaintiff's claims.  The motion is supported by verified exhibits from the administrative

record of plaintiff's Equal Employment Opportunity complaint at the agency level, which

includes sworn affidavits from plaintiff, the three members of the selection recommendation panel and the selecting official, Frank Jackson. Based on this evidence, Vilsack contends that Walton cannot establish a prima facie case of age or race discrimination. Defendant also argues that, even conceding that plaintiff can establish a prima facie case of sex discrimination and even if she could establish a prima facie case of age and/or race discrimination, she has no evidence to rebut his legitimate, nondiscriminatory reasons for not selecting her for either of the available positions. Record Doc. No. 27.

Defendant's memorandum and statement of uncontested facts, Record Doc. Nos. 27-1 and 27-12, contained complete birth dates in violation of Fed. R. Civ. P. 5.2(a). I ordered those documents removed from the record and ordered Vilsack to file new versions of them with the birth dates redacted. Record Doc. No. 48. He has complied. Record Doc. Nos. 49, 49-1.

Plaintiff filed a timely opposition memorandum. Record Doc. No. 41. Vilsack received leave to file a reply memorandum, which included a new declaration under penalty of perjury and new documentary exhibits. Record Doc. Nos. 43, 44, 45. Because defendant's reply memorandum contained new exhibits, the court gave Walton an opportunity to file an additional memorandum to address the new evidence. Record Doc. No. 46. She filed a timely surreply memorandum. Record Doc. No. 47.

2

Having considered the complaint, the record, the submissions of the parties and the applicable law, IT IS ORDERED that defendant's motion for summary judgment is GRANTED for the following reasons.

I.    STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 was revised to "take effect on December 1, 2010, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending."  Order of the Supreme Court of the United States (Apr. 28, 2010), www.supremecourt.gov/orders/courtorders/frcv10.pdf.  Because "the standard for granting summary judgment remains unchanged" by the revision, Federal Civil Judicial Procedure and Rules, 2010 Amendments Advisory Committee Notes, at 260 (West 2011 rev. ed. pamph.) (hereafter "Advisory Committee Notes"), I find it just and practicable to apply the revised Rule 56 in this proceeding.

Revised Rule 56 establishes new procedures for supporting factual positions:

(1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

3

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.

(4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

4

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will

5

not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291 (5th Cir. 2009).

II.    FACTUAL BACKGROUND

The competent summary judgment evidence establishes the following undisputed material facts.  Walton, an African-American woman who was 55 years old at the time of the non-selection at issue, has worked for the USDA Grain Inspection, Packers and Stockyard Administration, Federal Grain Inspection Service since 1977.  In 2004, she obtained a master's degree in social work with a concentration in administration, planning and organization.  When the promotion opportunity arose in October 2006, she had worked for the previous five years as a Training Specialist at a GS-11 pay grade level in the New Orleans Field Office.

6

On October 23, 2006, the USDA posted a job announcement for the position of Supervisory Agricultural Commodity Grader (Grain), also known as an Area Manager, at the GS-12 level in the New Orleans Field Office.  The Federal Grain Inspection Service establishes official grain standards, prompts uniform application of standards by official personnel, provides a national system of grain inspection, and regulates the weighing and certification of the weight of grain shipped in interstate and foreign commerce.  The New Orleans Field Office is the largest in the country and is responsible for all grain and related products exported via the Gulf of Mexico.  The New Orleans Field Office is divided into four units, each reporting to an Area Manager, who is responsible for the daily operations of two or three grain elevators.

Plaintiff applied for the Area Manager job.  While the selection process was still ongoing, a second, identical position became available when an Area Manager retired.  Thus, two Area Manager positions were filled from the same pool of qualified applicants pursuant to the October 23, 2006 vacancy announcement.

Frank Jackson, an African-American male who is one year younger than plaintiff, was the Assistant Field Office Manager and was the selecting official for the Area Manager positions.  He had been plaintiff's first-line supervisor since August 2006.

Eleven candidates, including Walton, qualified for the position.  To narrow that number, Jackson chose three management officials from different geographical regions

7

to serve on a selection review committee.  The committee members were Dave Grady (African-American male, 51 years old at that time), John Good (Caucasian male, 59 years old) and Diane Palacek (Caucasian female, 53 years old).

Grady, Good and Palacek interviewed all of the qualified candidates using the same four questions, of which the candidates had advance notice.  Because the candidates all had similar qualifications, the interviews were used as a tool to distinguish among them.  Each panel member took notes and separately ranked the candidates.  After completing their interviews and rankings, the committee recommended the top five candidates to Jackson.  The committee found that all five recommended candidates were close in ranking.  Although the committee did not give Jackson their ranking scores, the members provided him with their comments regarding the interview performances of the recommended candidates.  After performing his own review (which is discussed below), Jackson selected Merle Russelburg and James Holmes for the vacancies.

Russelburg, a Caucasian male who was 56 years old when he was selected, had 32 years of experience with the agency, including the past 26 years as a Shift Supervisor at the GS-11 pay level.  At the time he applied for the promotion, he was serving as an Acting Supervisory Agricultural Commodity Grader at the GS-12/13/14 level.  He had more than one year's cumulative experience in being detailed to higher level positions, including his then-current position as Acting Supervisory Agricultural Commodity

Grader and previous positions as Acting Field Office Manager and Field Office Supervisor.  He had attended additional college courses and other extensive training, including managerial and supervisory training.

Holmes, an African-American male who was 53 years old at the relevant time, had 30 years of experience with the agency, including 25 years as an Agricultural Commodity Grader Shift Supervisor at the GS-11 level.

Jackson, the selecting official, knew and had worked with all of the recommended candidates.  He had supervised both Russelburg and Holmes for several years and had supervised plaintiff for about six months when he made the selection.

After receiving the review committee's recommendations and comments, Jackson personally rated the five recommended candidates on four factors:  honesty, work ethic, trustworthiness and respectfulness.  Based on his experience in working with each candidate, Jackson ranked Russelburg and Holmes equally at the top of the list of candidates, giving both a "perfect five" as to their trustworthiness, work ethic and respectfulness.  Using Russelburg's more extensive training and schooling "as a tiebreaker" between Russelburg and Holmes, Jackson ranked Russelburg first and Holmes second.  He ranked Walton third because, although she was "very close" to Russelburg and Holmes in his ratings, he had "observed that she has not reached the same level in her ability to work well with others" compared to Russelburg and Holmes.

9

Jackson's affidavit, Record Doc. No. 27-3 at pp. 30-31 (pp. 18-19 of the administrative record).  Jackson chose Russelburg for the first available vacancy, effective January 17, 2007, and chose Holmes for the second vacancy, effective February 4, 2007.

Jackson and the three committee members all denied in their affidavits that plaintiff's age, gender or race had anything to do with their rankings of the candidates.

III.   ANALYSIS

Defendant argues that Walton cannot make out a prima facie case of race discrimination under Title VII or of age discrimination under the ADEA.  Vilsack alternatively argues that, even though plaintiff can establish a prima facie case of sex discrimination and even if she could establish a prima facie case of race or age discrimination, he has produced legitimate nondiscriminatory reasons for not selecting her for the job of Area Manager, and that she has no evidence to rebut those reasons.

A.   Plaintiff Has Waived her Age Discrimination Claim

In her opposition and surreply to defendant's motion, Walton does not respond to any of defendant's arguments regarding her age discrimination claim.  Although she alleged age discrimination in her complaint, her "complete failure to raise any legal or factual issue regarding that claim in [her] Opposition constitutes a waiver of the issue." Ledet v. Fleetwood Enters., Inc., 245 F.3d 791, 2000 WL 1910173, at *3 (5th Cir. 2000) (citing Savers Fed. Sav. & Loan Ass'n v. Reetz, 888 F.2d 1497, 1501 (5th Cir. 1989);

Batterton v. Tex. Gen. Land Office, 783 F.2d 1220, 1224-25 (5th Cir. 1986); Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1164 (5th Cir. 1983); Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir. 1983)); accord Ross v. Baylor College of Med., No. H-08-3080, 2010 WL 2710397, at *8 n.54 (S.D. Tex. July 7, 2010) (citing Vela v. City of Houston, 276 F.3d 659, 678 (5th Cir. 2001); Hargrave, 710 F.2d at 1164); Smith v. Tex. Dep't of Family & Prot. Servs., No. SA-08-CA-940-XR, 2009 WL 2998202, at *3 n.2 (W.D. Tex. Sept. 15, 2009); Holloway v. Town of Simmesport, No. CV08-0464-A, 2009 WL 1044554, at *7 (W.D. La. Apr. 17, 2009); Pashby v. Letum Care, Inc., No. CIVA 05-1507, 2006 WL 2700697, at *8 (W.D. La. Sept. 15, 2006).

Moreover, even if plaintiff had not waived her age discrimination claim, it is undisputed that everyone involved in the promotion, from plaintiff to Jackson and the three review committee members to the two selected candidates, was over 50 years old. The ADEA protects "[i]ndividuals at least 40 years of age," 29 U.S.C. § 631(a), from discrimination based on their age. Godfrey v. Katy Indep. Sch. Dist., 395 F. App'x 88, 91 (5th Cir. 2010). Walton cannot establish a prima facie case of age discrimination because she cannot show that someone outside her protected age group was promoted instead of her or that she was treated less favorably than other similarly situated employees outside the protected group. Mitchell v. Snow, 326 F. App'x 852, 854 (5th Cir. 2009) (citing McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007)).

Accordingly, defendant is entitled to summary judgment in his favor on plaintiff's age discrimination claim.

     B.    <u>Walton Cannot Rebut Defendant's Legitimate Nondiscriminatory Reasons</u>

As to her claims of race and sex discrimination, Walton has the initial burden of proving a prima facie case by a preponderance of the evidence. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). In a case alleging discriminatory failure to promote, the

> burden is on the plaintiff to make out a <u>prima facie</u> case of racial [or sexual] discrimination by showing (1) he belongs to a protected class; (2) he applied and was qualified for the job sought; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position was filled by someone not in the protected class.

<u>Walker v. Geithner</u>, 400 F. App'x 914, 916 (5th Cir. 2010) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Oden v. Oktibbeha Cnty.</u>, 246 F.3d 458, 468 (5th Cir. 2001)). "Overall, the burden of establishing a prima facie case is not onerous." <u>Bright v. GB Bioscience Inc.</u>, 305 F. App'x 197, 202 (5th Cir. 2008) (citing <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

> If the plaintiff can establish a <u>prima facie</u> case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets that burden, the burden shifts to the plaintiff to prove that the proffered reason is not true, but rather a pretext for the real discriminatory purpose.

<u>Walker</u>, 400 F. App'x at 916 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>McCoy</u>, 492 F.3d at 557).

Even assuming without deciding that Walton could establish a prima facie case of sex discrimination (based on two males being selected for the promotions) or race discrimination (based on one Caucasian being selected, although an African-American was also selected), Vilsack has met his burden of producing legitimate nondiscriminatory reasons for choosing Russelburg and Holmes instead of plaintiff.  The burden of persuasion therefore shifts to Walton, but her evidence fails to establish a triable genuine issue of fact as to whether defendant's proffered reasons were pretextual.

"Selection of a more qualified applicant is a legitimate and nondiscriminatory reason for preferring one candidate over another."  <u>Sabzevari v. Reliable Life Ins. Co.</u>, 264 F. App'x 392, 395 (5th Cir. 2008) (citing <u>Burdine</u>, 450 U.S. at 251-53).  However, Walton argues that she was clearly better qualified than the selected candidates because she has a master's degree in social work.

In a failure to promote case, "a plaintiff may survive summary judgment and take his case to the jury by providing evidence that he was 'clearly better qualified' than the employee selected for the position at issue."  <u>Celestine v. Petroleos de Venezuella SA</u>, 266 F.3d 343, 356-57 (5th Cir. 2001), <u>abrogated on other grounds by</u> <u>Nat'l R.R.</u>

13

Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (citations omitted); accord Warren v. City of Tupelo, 332 F. App'x 176, 181 (5th Cir. 2009).

> The bar for showing pretext through superior qualifications is high; "differences in qualifications are generally not probative evidence of discrimination unless those disparities are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."

Dulin v. Bd. of Comm'rs, No. 10-60095, 2011 WL 2654738, at *6 (5th Cir. July 8, 2011) (quoting Celestine, 266 F.3d at 357) (emphasis added).  Thus, Walton "must raise a fact issue as to whether [she] was 'clearly better qualified' and not merely 'similarly qualified.'"  Sabzevari v. Reliable Life Ins. Co., 264 F. App'x 392, 395 (5th Cir. 2008) (citation omitted).

Jackson stated in his affidavit that he ranked Russelburg and Holmes equally at the top of the list.  To break the tie between these two top-ranked candidates, Jackson used Russelburg's training, which was more extensive than that of Holmes, and put Russelburg in first place and Holmes in second.  Plaintiff was "very close" to Russelburg and Holmes in Jackson's ratings.  Jackson ranked her third, based on his personal experience with each candidate, because he had "observed that she has not reached the same level in her ability to work well with others" compared to both Russelburg and Holmes.  Walton does not dispute that an "ability to work well with others" was a legitimate requirement for the position of Area Manager.

14

Defendant's "response qualifies as a legitimate nondiscriminatory employment action, if true and not a pretext." Baker v. Am. Airlines, Inc., 430 F.3d 750, 754 (5th Cir. 2005).   Because Vilsack "has articulated a nondiscriminatory reason for [his] employment action, the next step of the analysis returns the burden to [plaintiff]. Moreover, this burden is one of persuasion, not merely production of evidence." Id.

Walton's master's degree in social work is an educational qualification that the vacancy announcement did not require.  See Vacancy Announcement, Record Doc. No. 27-4 at pp. 7-25 (pp. 36-54 of administrative record).   The only question on the application regarding educational level asked applicants to state the number of semester hours of college-level course work or training they had completed in the fields of agriculture, agronomy, horticulture, food science or technology, animal science, poultry science, botany, chemistry, biology or zoology.  Record Doc. No. 27-4 at pp. 17-18 (pp. 46-47 of administrative record).  Both plaintiff and Russelburg responded ">24" hours, which was the highest of the possible multiple choice answers to this question, while Holmes responded "16-20" hours.  Plaintiff's application, Record Doc. No. 27-5 at p. 3 (p. 63 of administrative record); Holmes's application, Record Doc. No. 27-6 at p. 3 (p. 88 of administrative record); Russelburg's application, Record Doc. No. 27-6 at p. 21 (p. 106 of administrative record).  Neither these responses with regards to the college-level training that each had received in the specific fields designated on the application nor

15

Walton's master's degree in the unspecified field of social work creates a genuine fact issue that she was "clearly better qualified" than Russelburg and Holmes.

College-level educational achievement was only one element among many that rendered plaintiff and ten other candidates qualified to be interviewed by the review committee.  To narrow the field from the five applicants recommended by the committee to just two, Jackson applied additional criteria.  He used Russelburg's education and training, which were greater than those of Holmes, to break the tie between those two men and rank them first and second, respectively.  There was no need for Jackson to use plaintiff's higher educational level as a tie-breaker because she was not tied in rank with either Russelburg or Holmes.  She was ranked third because Jackson found that her demonstrated ability to work well with others was less than that of both Russelburg and Holmes.  Obviously, he considered that element more critical to the job of Area Manager than the holding of a master's degree in a field not specified by the vacancy announcement.

Both the vacancy announcement and the job description confirm that the ability to work well with others was a significant part of the job.  See Vacancy Announcement, Record Doc. No. 27-4 at pp. 8-9 (pp. 37-38 of administrative record) and Position Description, Record Doc. No. 27-4 at pp. 28-29 (pp. 57-58 of administrative record) (major duties include directing and coordinating 20-30 staff members; providing

technical, on-the-job instructions and determining the accuracy and proficiency of graders' interpretations and applications of standards and specifications; representing the Field Office in formal and informal negotiations with Union officials; recruiting and selecting subordinates; providing official interpretations and assistance to the trade, State and local agencies and other interested parties; responding to technical and administrative inquiries from headquarters, industry officials and others; and negotiating and compromising with private sector elevator managers).

Thus, while plaintiff's master's degree in social work was undoubtedly a relevant part of her qualifications, it does not appear to be of "such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question" solely because of that extra qualification. Dulin, 2011 WL 2654738, at *6; accord Bacas v. Harvey, 270 F. App'x 329, 331 (5th Cir. 2008); Sabzevari, 264 F. App'x at 395; Amie v. El Paso Indep. Sch. Dist., 253 F. App'x 447, 454 (5th Cir. 2007); Washington v. Jackson State Univ., No. 3:07cv00074-DPJ-JCS, 2008 WL 2779297, at *6 (S.D. Miss. July 14, 2008).

Bacas v. Harvey was a similar failure to promote case brought against a federal employer.  In that case, a selection board reviewed the resumes of plaintiff Bacas and another candidate, Snodgrass,

> and concluded that Snodgrass was the best-qualified candidate because he had been a facilities manager in the past, had recent supervisory experience, and had recent health facility training. . . . Bacas asserts that he was clearly better qualified because he had a bachelor's and a master's degree while Snodgrass was only a high school graduate. However, the facilities manager position did not require college education. Further, the selection board credited Bacas with superior educational credentials, but still recommended Snodgrass based upon a consideration of each candidate's overall qualifications. Accordingly, Bacas has not countered the Secretary's legitimate, non-discriminatory reasons for promoting Snodgrass in lieu of Bacas.

Bacas, 270 F. App'x at 331 (citing Manning v. Chevron Chem. Co., 332 F.3d 874, 882 (5th Cir. 2003)); see also Washington, 2008 WL 2779297, at *6 (quoting Sabzevari, 264 F. App'x at 395) (Plaintiff's "two masters degrees, his co-authorship of two statistical surveys, his membership and leadership in various school and community organizations, and his years of experience in different employment positions" failed to "'raise an issue as to whether he was clearly better qualified on the whole,'" when the selection committee cited other legitimate, non-retaliatory reasons for ranking him last among the qualified candidates.).

As in Bacas and Washington, Walton's mere holding of a higher educational degree than the successful candidates, especially when that degree is in social work as opposed to something more closely related to grain grading, grain elevator operations, or even agriculture, "fail[s] to suggest that [she] was clearly better qualified than"

Russelburg or Holmes for the job of Area Manager of a Federal Grain Inspection Field Office.  Manning, 332 F.3d at 882 (emphasis in original).

Plaintiff also argues that Jackson's final ranking criteria were subjective and are probative of his discriminatory intent.  The Fifth Circuit has ruled that "[t]he mere fact that an employer uses subjective criteria is not, however, sufficient evidence of pretext. . . .  [A]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII."  Manning, 332 F.3d at 882 (citing Millbrook v. IBP, Inc., 280 F.3d 1169, 1176 (7th Cir. 2002); Denney v. City of Albany, 247 F.3d 1172, 1185 (11th Cir. 2001)) (quotations omitted) (emphasis added); accord Browning v. Sw. Research Inst., 288 F. App'x 170, 177 (5th Cir. 2008).

Walton disagrees with Jackson's allegedly subjective finding, relative to the promotion opportunity, that "she has not reached the same level in her ability to work well with others" as Russelburg and Holmes.  She cites her performance appraisals for the periods from October 1, 2005 through September 30, 2006 and October 1, 2006 through September 30, 2007, in which her supervisor, Jackson, gave her a rating of "exceeds fully successful" in the interpersonal relations category.  She states that this was "exactly the same" rating that Russelburg and Holmes received in the same category on their respective performance appraisals, which Jackson also signed.  Based on this

19

evidence, Walton argues that Jackson knew that her interpersonal skills were equal to those of Russelburg and Holmes and therefore his stated reason for ranking her third for the Area Manager job must be false.  She also contends that Jackson favored the two men because he had only supervised her for about six months, while he had supervised them for more than ten years.  She argues that this alleged favoritism means that he must have discriminated against her on the basis of her sex and race.

Plaintiff submitted two <u>unsworn</u> letters of recommendation from two other persons with whom she had worked, dated March 2010, more than three years <u>after</u> the promotion decision at issue, which, she argues, also establish that her interpersonal skills were excellent.  Plaintiff's Exhs. 7 and 8, Record Doc. No. 41-13 at pp. 19-20.  Defendant objects, correctly, that these unsworn letters are not proper summary judgment evidence.  Fed. R. Civ. P. 56(c)(1)(A); <u>Smith v. Consol. Recreation & Cmty. Ctr.</u>, 131 F. App'x 988, 989-90 (5th Cir. 2005).  Furthermore, even if the letters were admissible, they appear to be irrelevant both to the time period at issue and to the particular qualifications of the Area Manager position.

The relevant question is <u>not</u> "whether or not [Jackson's] perception of [Walton's] performance was accurate," but whether she has carried her burden to "provide the court with relevant record facts on which to base a contrary conclusion" and draw the inference that Jackson's false reasons were pretexts for discrimination.  <u>Bright</u>, 305 F. App'x at

20

205.  However, Walton "has proffered no evidence suggesting [Jackson's] testimony to be less than truthful." Moss, 610 F.3d at 927 (citing EEOC v. WC&M Enters., Inc., 496 F.3d 393, 398 (5th Cir. 2007)).

Jackson's ratings of each of the three employees as "exceeds fully successful" in their interpersonal work relations, for purposes of their annual performance appraisals in their non-identical, GS-11 positions of Training Specialist (Walton) and Supervisory Agricultural Commodity Grader (Russelburg and Holmes), does not even suggest that Jackson falsely stated, for purposes of the promotion to Area Manager, that plaintiff's ability to work well with others was less than that of Russelburg and Holmes.  Jackson acknowledged that Walton was "very close" to Russelburg and Holmes in his final ranking.  He necessarily made fine distinctions among the skills of the closely rated top five well-qualified candidates in order to select just two for the available positions.

It is immaterial whether Jackson's decision may have been based on incorrect facts, so long as it was not motivated by discriminatory animus.  Moss v. BMC Software, Inc., 610 F.3d 917, 926 (5th Cir. 2010); Mato, 267 F.3d at 452.

> Disagreements over which applicant is more qualified are employment decisions in which we will not engage in the practice of second guessing. . . .  Even if evidence suggests that a decision was wrong, we will not substitute our judgment as to who was more qualified for the employer's business judgment. . . .  Such disputes do not support a finding of discrimination and have no place in front of a jury.

21

Scott v. Univ. of Miss., 148 F.3d 493, 509-10 (5th Cir. 1998), abrogated on other grounds by Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72 (2000) (citations omitted).  No genuine issue of material fact concerning Jackson's discriminatory animus can be inferred from plaintiff's evidence.

Finally, Walton attempts to show that she was the victim of "systematic and deliberate gender and racial discrimination" by pointing to defendant's admissions in his Answers to Interrogatories that "no females of any race had ever applied for" the Area Manager position in the New Orleans Field Office and that no "African-American females" had been promoted to GS-12 positions.  Vilsack responds by contending that Title VII does not protect a category of "African-American females," but only protects the separate categories of African-Americans and females.  Therefore, he asserts that plaintiff's argument fails because two Caucasian women were promoted to GS-12 and because Holmes, an African-American male, was promoted to Area Manager.

Defendant is incorrect that plaintiff cannot present evidence of discrimination against her as an African-American female.  The Fifth Circuit in Jefferies v. Harris County Cmty. Action Ass'n, 615 F.2d 1025 (5th Cir. 1980), concluded that "discrimination against black females [could] exist even in the absence of discrimination against black men or white women."  Id. at 1032 (citing Phillips v. Martin Marietta Corp., 400 U.S. 542, 544 (1971)).  Other courts have agreed that a plaintiff with two

protected traits, such as race and sex, may bring a claim that she was subjected to discrimination based on her combined traits. Lam v. Univ. of Haw., 40 F.3d 1551, 1562 (9th Cir. 1994) (citing Hicks v. Gates Rubber Co., 833 F.2d 1406, 1416 (10th Cir. 1987); Jefferies, 615 F.2d at 1032; Graham v. Bendix Corp., 585 F. Supp. 1036, 1047 (N.D. Ind. 1984); Chambers v. Omaha Girls Club, 629 F. Supp. 925, 946 n.34 (D. Neb. 1986), aff'd, 834 F.2d 697 (8th Cir. 1987)); Hicks, 833 F.2d at 1416 (citing Jefferies, 615 F.2d at 1032; Graham, 585 F. Supp. at 1047; Chambers, 629 F. Supp. at 946 n.34); Johnson v. Dillard's Inc., No. 3:03-3445-MBS, 2007 WL 2792232, at *4-5 (D.S.C. Sept. 24, 2007) (citing Phillips, 400 U.S. at 544; Black v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 118 n.7 (2d Cir. 2004); Lam, 40 F.3d at 1562; Gee-Thomas v. Cingular Wireless, 321 F. Supp. 2d 875, 881 (M.D. Tenn. 2004); Rauw v. Glickman, No. CV-99-1482-ST, 2001 WL 34039494, at *8 (D. Or. Aug.6, 2001); McGrane v. Proffitts Inc., No. C 97-221-MJM, 2000 WL 34030843, at *7 (N.D. Iowa Dec. 26, 2000)); Nieto v. Kapoor, 182 F. Supp. 2d 1114, 1140 (D.N.M. 2000) (citing Hicks, 833 F.2d at 1416-17; Jefferies, 615 F.2d at 1032).

"The evidence [plaintiff] provides, however, does not demonstrate pretext." Manning, 332 F.3d at 882 (quoting Sessions v. Rusk State Hosp., 648 F.2d 1066, 1071 (5th Cir. Unit A Jun. 1981) ("'The statistical evidence buttresses [the plaintiff's] prima facie case, but it does not demonstrate that the reason advanced for failure to promote

[her] lacked either substance or credibility.'"")).   While admitting that no African-American women have ever applied for or been promoted to the position of Area Manager, Vilsack's Answers to Interrogatories explain that this position was created in 1995 and that the "original Area Managers were the displaced Asst. Field Office Managers from the combined field offices.  Only 5 Area Manager Positions have been filled since that time."  Defendant's Exh. 4 to reply memorandum, Record Doc. No. 43-4, Answer to Interrogatory No. 3.  The position description in the administrative record indicates that there are four Area Managers in the New Orleans Field Office.  Record Doc. No. 27-4 at p. 28 (p. 57 of administrative record).  Plaintiff's slim statistical evidence fails to support any inference of discrimination or rebut Jackson's legitimate nondiscriminatory reasons for not selecting Walton for two of the five Area Manager positions that have been available since 1995.

Plaintiff's assertions in her affidavit that "I feel that I have more experience and training" than Russelburg and Holmes and that "this is a very male oriented atmosphere [where] . . . managers have not been willing to promote Black females in managerial positions" do not create a genuine disputed fact issue for trial.  Record Doc. No. 27-3 at pp. 23, 24 (pp. 14, 15 of administrative record).  Her mere subjective belief, "supported solely by her own self-serving affidavit," Strong v. Univ. Health Care Sys., L.L.C., 482 F.3d 802, 807 (5th Cir. 2007), that she did not receive the promotion because of her race

24

and/or gender is insufficient to support an inference of defendant's discriminatory intent. Roberson v. Alltel Info. Servs., 373 F.3d 647, 654 (5th Cir. 2004).

Therefore, Walton has pointed to no record evidence to create a genuine fact issue that the distinctions Jackson made between plaintiff and the other two, higher ranked applicants were false or unworthy of belief.  No inference can be drawn that defendant discriminated against her based on any prohibited factor or combination of factors.

Accordingly, Vilsack is entitled to judgment in his favor as a matter of law on all of plaintiff's discrimination claims.

CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that defendant's motion for summary judgment is GRANTED and that plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs of this proceeding.  Judgment will be entered accordingly.

New Orleans, Louisiana, this __10th__ day of August, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

25